# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

|  |  |
|---|---|
| MILENA APERYAN,<br><br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br><br>Respondents. | No. 5:26-cv-00699-WLH-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I.   SUMMARY

Petitioner Milena Aperyan filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for injunctive relief. Ms. Aperyan is currently in the custody of the Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility. Immigration authorities apprehended the Petitioner in 2024 after she entered the United States and she has resided in the United States since her entry on September 19, 2024. On September 20, 2024, Ms. Aperyan was deemed subject to removal under INA 212(a)(7)(A)(i) and has remained in compliance with her supervision conditions since that time. (Dkt. No. 1 at 12.) Petitioner is in removal proceedings but does not have a final order of removal. (Dkt. No. 1 at 2; Dkt. No. 15 at 8–9.)

In this habeas action, Ms. Aperyan challenges the lawfulness of her detention by ICE, pursuant to § 1126 and *Bautista*, the Due Process Clause, and

the Administrative Procedures Act ("APA"). The Petition also includes an application for preliminary relief as a temporary restraining order or preliminary injunction, requesting the same relief as in the Petition. Petitioner seeks immediate release based on compelling humanitarian considerations arising from her role as the primary caregiver of her disabled infant son.

Following several recent decisions in this District, the Court finds that Petitioner's sudden detention—without any meaningful pre-or post-deprivation process—violates due process. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her.

## II.      FACTS AND PROCEDURAL HISTORY

Petitioner Milena Aperyan is a 21-year-old native and citizen of Armenia. (Dkt. No. 1 at 6.) Petitioner was arrested by immigration officers at the port of entry in Otay Mesa, California, on September 19, 2024. (Dkt. No. 15, at 8.) She entered the United States, as an "asylum-seeking noncitizen," (Dkt. No. 1 at 2), on September 19, 2024, and was apprehended by immigration authorities that same day (Dkt. No. 15, at 2.). On September 20, 2024, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging Ms. Aperyan as subject to removal under INA section 212(a)(7)(A)(i) (codified in 8 U.S.C. § 1182(a)(7)(A)(i)) for entering as an applicant for admission who is not in possession of valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document.[1] (Dkt. No. 1 at 8.) Ms. Aperyan was released

---

[1] Petitioner also claims the Department charged her as "an alien present in the United States without having been admitted or paroled" pursuant to INA §212(a)(6)(A)(i). However, the Petition and subsequent NTA evidence submitted by the Respondents do not include that charge. Thus, the Court will proceed considering only the INA §212(a)(7)(A)(i) charge.

from custody subject to supervision under Immigration and Customs Enforcement's ("ICE's") Non-Detained/Alternatives to Detention Unit ("ND/ATD"), which included regular reporting to ICE. (Dkt. No 15, at 8.) Ms. Aperyan was ordered to appear at a future hearing before an Immigration Judge ("IJ") scheduled for May 6, 2026, at 1:00 PM. *Id*. at 14.

From her time of entry in September 2024 until January this year, Petitioner claims she has remained in compliance with her supervision conditions. (Dkt. No. 1.) On January 9, 2026, pursuant to the conditions of her release, Petitioner appeared as instructed for a routine check-in with the ICE Alternatives to Detention Unit in Los Angeles, California. (Dkt. No. 1 at 2; Dkt. No 15, at 8.) At the check-in, she was issued a Form I-213[2] (Record of Deportable/Inadmissible Alien) on January 9, 2026, alleging "numerous violations" of her release. (Dkt. No. 15, Ex. B.) Petitioner was arrested by ICE Enforcement and Removal Operations officers. *Id*. Petitioner was not given any specifics or notice of what the violations were before the time of detention. (Dkt. No. 1.) She was then transferred to the Adelanto Detention Facility. *Id*. at 2. Until her re-detention, Petitioner had been out of custody for a year and a half. *Id*. At the time of her arrest and re-detention, she was the primary caretaker of a then fifteen-month-old disabled infant child. *Id*. at 9.

The Government submitted supplemental evidence at the request of the Court. (Dkt. No. 15.) It submitted Form I-831 (Record of

---

[2] Form I-213, Record of Deportable/Inadmissible Alien, provides the basis to support DHS's position that a person should be removed from the United States. It captures a range of information regarding a noncitizen apprehended by DHS to support the factual allegations and charge(s) of removability contained in the NTA. This includes biographic information, possible criminal records, any history of apprehension and detention by immigration authorities, and other relevant information. U.S. DEP'T OF JUST., *Descriptions of Forms and Supporting Documents*, https://www.justice.gov/d9/2024-09/02._sept_24_descriptions_of_forms_and_supporting_documents.pdf.

Deportable/Inadmissible Alien) dated January 9, 2026, which states that Petitioner had a negative result for National Crime Information Center ("NCIC") check and was thus not compliant with her ATD release conditions because of "numerous violations while under the ISAP program." *Id*. at 8. This finding was dated the same day of Petitioner's re-detention. *Id*.

Petitioner disputes that she has "numerous violations under the ISAP program." In her Petition, Ms. Aperyan argues that she has "complied with immigration reporting requirements prior to detention." (Dkt. No. 1 at 12, 32 ¶52.) In her Reply to the Supplemental Evidence, Petitioner argues that the government has not identified the dates of the alleged missed appointments, how many appointments were missed, what notice was sent and whether appoints were later rescheduled or excused. (Dkt. No. 18 at 7.) Petitioner further argues that she was never given a reason for her detention, or an opportunity to respond to the reasons for her detention. *Id*. Further, Petitioner argues that a missed appointment would not support the government's decision to re-detain her as it does not establish she is a flight risk. *Id*.

Petitioner filed the instant habeas petition on February 13, 2026. (Dkt. No. 1.) Respondents filed their Answer on March 3, 2026. (Dkt. No. 9.) Petitioner filed a Reply on March 11, 2026. (Dkt. No. 12.) The parties appeared for a hearing on March 20, 2026. (Dkt. No. 14.) Parties submitted supplemental briefing. (Dkt. Nos. 15, 18.) Both parties have consented to proceed before the Magistrate Judge. (Dkt. Nos. 16, 17.)

### III.    DISCUSSION

Petitioner argues that her ongoing confinement violates the INA, the APA and the Fifth Amendment due process. The Respondents argue the Court lacks Jurisdiction under 8 U.S.C. § 1252 and Petitioner is not entitled to a bond hearing under 8 U.S.C. § 1226(a).

**A. The Court Does Not Lack Subject Matter Jurisdiction.**

The Court begins by addressing Respondents' argument that the federal courts lack subject matter jurisdiction over Petitioner's habeas claims.

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001)). Petitioner here advances a classic habeas claim—that her confinement by federal immigration authorities violates the Due Process Clause and the APA.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through two provisions of the immigration laws, 8 U.S.C. §§ 1252(g) and 1252(b)(9). (Dkt. No. 9 at 5–9.) However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g.*, *Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1– 2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015, 1019 (C.D. Cal. 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . " 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of*

*California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that Petitioner's claims fall within one of the three listed actions because his "detention arises from the decision to *commence* such proceedings against him." (Dkt. No. 9 at 5–6.) (emphasis added). But the Supreme Court has refused to "interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed Section 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge his detention, not the Government's "prosecutorial discretion" to "commence" removal proceedings. As such, Section 1252(g) does not apply.

Nor does Section 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken ... to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of Section 1252(g), the Supreme Court has rejected an "expansive interpretation of" Section 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* Accordingly, the Court has twice held that Section 1252(b)(9) does not apply to

noncitizens' claims challenging their detention without a bond hearing. *Id.*; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Petitioner's claims—like those at issue in *Jennings* and *Preap*—do not seek review of an order of removal or challenge "the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]." *Preap*, 586 U.S. at 402. Accordingly, Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that her ongoing confinement violates due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Answer. (Dkt. No. 9.) Accordingly, the Court construes Respondents' failure to address Petitioner's due process claim as a concession. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). In the interest of being thorough, the Court will still analyze the merits of Petitioner's Due Process claim.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The Fifth Amendment provides that "[n]o person shall…be deprived of…liberty…without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States,

7

"including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–1033 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d at 1032–1033 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that procedural due process principles prohibit the Government from re-detaining her without adequate pre-deprivation process or a material intervening change in circumstances.

In reaching this conclusion, the Court is guided by the analysis in a decision by District Judge Mark Scarsi in *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). There, ICE

8

detained the petitioner, who had been paroled into the United States a decade earlier, when she appeared as instructed for an appointment with United States Citizenship and Immigration Services. As here, ICE did not provide the petitioner notice or a hearing before detaining her. And as here, the petitioner had complied with her release conditions throughout her time on parole. Judge Scarsi found that the petitioner's detention violated her due process rights and issued a temporary restraining order requiring the petitioner's release and preventing her re-detention without a pre-deprivation hearing. *Id*. at \*3; *see Cruz v. Lyons*, No. 25-CV-02879, 2025 WL 3443146 (C.D. Cal. Dec. 1, 2025) (granting preliminary injunction a month later). *See also Meneses v. Santacruz*, No. 2:25-cv-11206-MCS-PVC, 2025 WL 3481771, at \*4 (C.D. Cal. Dec. 2, 2025) (granting preliminary injunction requiring release of noncitizen based on substantially similar analysis).

As in *Cruz*, the Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line-test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

**1. Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her settled life out of custody. Petitioner has lived in the United States for approximately one and a half years, during which time she has served as the primary caregiver to her disabled infant child and developed ties with her family and community. (Dkt. No. 1 at 31.) While Petitioner remained subject to supervision during this time, "a person who is in

fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for approximately a year and half before her recent re-detention. (Dkt. No. 1 at 2.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has been the primary caretaker of a disabled fifteen-month-old infant child, has a stable residence with family support, and deepened her connections with her family and communities in the United States. (*See* Dkt. No. 1 at 31, Exhs. C, E.) (describing Petitioner's son's disabilities and how she is the primary caregiver, as well as connections with her community and church in the United States while released on supervision). While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf*

10

*v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g., Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects the Petitioner's substantial liberty interest in maintaining her freedom from confinement.

### 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz v. Lyons,* No. 25-CV-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S.

at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 25-CV-02198, 2025 WL 2730235, at \*6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released under ATD. (Dkt. No. 15 at 8.) "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The risk of a wrongful deprivation is especially high here given evidence that Petitioner has no criminal record, has argued her compliance with the terms of her parole, and has maintained required contacts with the federal government, including the one that precipitated her detention. (Dkt. No.1; Dkt. No. 15 at 7–9.) Since her release, Petitioner has not given any reason to think that the Government's determination was in error. Though the government alleges a vague statement that she has "numerous violations while under the ISAP program," it provides no documentation as to what those alleged violations were, when they occurred and what notice was given to Petitioner. An ISAP violation can be as miniscule as a missed app prompt or as substantial as a new criminal arrest. Given that Petitioner was picked up at a routine ICE check-in, the record is insufficient to show she was not compliant with her ATD release

12

conditions. (Dkt. No. 15 at 8.) Petitioner argues she has complied with her conditions of supervision, including by reporting for regular check-ins with ICE, and maintaining a stable life with her family, including caring for a disabled child. (Dkt. No. 1.)

The Court concludes that there is a high risk that the lack of pre-deprivation process—that is, notice of any alleged release violations and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### 3. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz v. Lyons*, 25-cv-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine…" *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is

13

minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process and that she should be released forthwith.

Finally, the Court turns to the question of exactly what process is due before the Government may re-detain Petitioner. It is well-established that the Due Process Clause usually "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Petitioner specifies the "kind of" hearing she believes is warranted before she may be re-detained: "a meaningful, individualized custody determination before a neutral decisionmaker where liberty interests are at stake. Such a determination must assess whether continued detention is actually necessary to mitigate flight risk or danger to the community." (Dkt. No. 1 at 32 ¶53.) *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that due process requires the government to justify prolonged immigration detention of certain noncitizens by "clear and convincing evidence" that an alien is a flight risk or a danger to the community). Here, the Petitioner was re-detained on January 9, 2026, when she reported as instructed for a supervision check-in as per her reporting requirements—the same day the government provided Form I-213 indicating there were "numerous violations" of her release conditions. (Dkt. No. 1 at 2; Dkt. No. 15 at 8.) Providing a document on the same day of detention is insufficient pre-deprivation notice to provide a meaningful opportunity to respond. Ms. Aperyan did not receive adequate notice of this finding and had no opportunity to meaningfully respond prior to her detention. Moreover, Respondents did not address the appropriate procedures for a re-detention. Because Respondents do not provide any reason to reject Petitioner's position, and it is consistent with *Singh*, Petitioner's requested relief is appropriate.

Accordingly, the Court hereby orders Petitioner released from detention forthwith and the Respondents are hereby prevented from re-detaining the Petitioner. If the Respondents are to re-detain her, Petitioner must be provided adequate pre-deprivation notice and a hearing at which the Government must justify the need to confine her.

### C. Petitioner's Remaining Claims

Because the Court concludes that Petitioner is entitled to release on due process grounds, it declines to address her alternative arguments including whether her detention violates § 1126 and *Bautista,* and the APA. The Court does conclude—as it is undisputed that Petitioner applied for admission through the border with Mexico as an asylum-seeking noncitizen who was not in possession of a valid entry document and is charged with INA §212(a)(7)(A)(i) (codified as 8 U.S.C. § 1182(a)(7)(A)(i)), and detained under 8 U.S.C. section 1225(b)—she is not entitled to a bond hearing under § 1225(b).

### IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release along with her personal belongings, subject to appropriate conditions of supervision, and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine her; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least 20 days of notice prior to Petitioner being

15

removed from this jurisdiction.

IT IS SO ORDERED.

DATED:   March 27, 2026

*/s/ Anna Y. Park*

_____

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

16